# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ARLINGTON SPECIALTIES, INC., | ) | Civil Action No: 13-cv-04180 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | Magistrate Judge Maria Valdez |
| | ) | |
| URBAN AID, INC., | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

# URBAN AID, INC.'S MEMORANDUM IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Rejected Trademark Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Alleged Infringement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    THE ELEMENTS OF THE TRADE DRESS CLAIM. . . . . . . . . . . . . . . . . . . . . . . 3

    II.    ARLINGTON'S "TRADE DRESS" IS PURELY GENERIC AND CAN NEVER BE PROTECTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    The Standards for Generic Trade Dress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.    The Arlington Specialties Bag Fits Every Formulation Of "Genericness". . . . 5

    III.    THE ARLINGTON SPECIALTIES BAG IS PURELY FUNCTIONAL. . . . . . . . . . 7

        A.    Standards For Determining Functionality. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    The "Bag" Is Purely Functional and Therefore Not Entitled To Trade Dress Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.    EVEN IF NOT FUNCTIONAL, ARLINGTON SPECIALTIES CANNOT SHOW EITHER SECONDARY MEANING OR LIKELIHOOD OF CONFUSION. . . . . . . 10

        A.    There Is No Possibility of Showing Secondary Meaning. . . . . . . . . . . . . . . 10

        B.    There Is No Likelihood Of Confusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    V.    THE STATE LAW CLAIMS MUST ALSO BE DISMISSED. . . . . . . . . . . . . . . . . 12

        A.    The Unfair Competition Claims Based On The Alleged "Trade Dress" Infringement Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.    The Interference With Prospective Business Advantage Fails To State A Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    The Complaint Fails To State A Claim. . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Competition Is A Complete Defense. . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Belden Corp. v. Internorth. Inc.*, 90 Ill. App. 3d 547, 552, 413 N.E.2d 98 (1980). . . . . . . . . . . . . . 14

*Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1240 (D. Haw. 2003). . . . . . . . 4, 6

*Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997 (N.D. Ill. 2010). . . . . . . . . . . . . . . 4, 12

*Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 469 (2006). . . . . . . . . . . 14

*Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993,1000 (2nd Cir. 1997). . . . . . . . . . . . . . . . 6

*George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 395 (4th Cir. 2009). . . . . . . . . . . . . . 2

*Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hanig & Co., Inc. v. Fisher & Co., Inc.*, 1994 U.S. Dist. LEXIS 20422, 1994 WL 97758 at 4 (N.D. Ill. Mar. 24, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Indonesian Imports, Inc. v. Smith*, 1999 U.S. Dist. LEXIS 4237, 1999 WL 183629 at 6 (N.D. Cal. Mar. 30, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 at n.11, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 1, 7, 8

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2nd Cir. 1997). . . . . . . . . 4, 12

*Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 366 (S.D.N.Y. 2003). . . . . 7, 10

*Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2nd Cir. 1995). . . . . . . . . . . . . 4

*OgoSport LLC v. Maranda Enters. LLC*, 2012 U.S. Dist. LEXIS 27680 (E.D. Wis. Mar. 2, 2012). . . 2

*Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164, 131 L. Ed. 2d 248, 115 S. Ct. 1300 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989). . . . . . . . . . . . . . . 7

*Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 616 F.3d 722, 727 (7th Cir. 2010). . . . . . . . . . . 9

*Thomas & Betts Corp. v. Panduit Corp.*, 935 F. Supp. 1399, 1419 (N.D. Ill. 1996). . . . . . . . . . . . . 12

*TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 32, 149 L. Ed. 2d 164, 121 S. Ct. 1255 (2001). . . . 7

*Trendmasters, Inc. v. Walgreen Co.*, 1997 U.S. Dist. LEXIS 5601 (N.D. Ill. Apr. 18, 1997).. . . 10, 11

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 770, 120 L. Ed. 2d 615, 112 S. Ct. 2753 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . 8

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). . . . . . . . . . . . . . . . . . . . 6

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2nd Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 4

*Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 6066, 20-22 (N.D. Ill. Mar. 25, 1997).  13-15

## INTRODUCTION

Defendant Urban Aid, Inc. ("Urban Aid"), by and through its attorneys, moves this Court for summary judgment on the Complaint, on the ground that plaintiff Arlington Specialties, Inc. has no protectible trade dress in the generic bag shape claimed in the Complaint. In *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855 (7th Cir. 2010), the Seventh Circuit invalidated that registration on summary judgment, holding that a generic shape cannot be protected as trade dress. *Jay Franco* is controlling here. As stated by the U.S. Patent and Trademark Office ("USPTO"), the generic bag shape at issue as purported "trade dress" is used by countless companies as a cosmetics bag, a "Dopp kit," a utilities bag, and a toiletries bag. Since Arlington Specialties does not claim that there is any logo, material, ornamentation or color as its trade dress – only the bag's shape – as a matter of law, there is no viable claim under the Lanham Act or Illinois state law based on defendant Urban Aid's use of a bag-shaped product and summary judgment should be granted.

## FACTUAL BACKGROUND

Urban Aid has been in business for over 8 years, generally selling various types of commercially available emergency supplies packaged in a convenient packaging with somewhat humorous names, such as a "naughty nite" type kit, containing  a condom, pair of panties, etc., to other types of kits containing useful products. Statement of Undisputed Facts ("SUF") No. 1 Plaintiff Arlington Specialties is also in the same broad industry, and sells it's own packaged kits under the name "Minimergency," and contains private-labeled products with the "Pinch Provisions" logo. SUF 2. Urban Aid and Arlington Specialties are not direct competitors, although both are in the same market.  Both companies sell types of "survival kits," but the type of kits at issue do not compete with each other. SUF 3. In other words, a consumer might very well purchase kits from both companies since they fill different needs.  Thus, although the two companies are in

-1-

the same broadly general market, a sale of an Urban Aid kit does not cost Arlington Specialties a sale. SUF 4.

A.      The Rejected Trademark Application.

Arlington Specialties filed a federal trademark application Serial No. 85851833 on February 15, 2013, claiming a trade mark in

> a three-dimensional configuration for packaging featuring a soft, structured pouch having a rounded cuboid shape with distinctive folded and tucked corners, a zipper running from the midpoint of one side of the pouch horizontally along the length of the top of the pouch to the midpoint of the second side of the pouch, and a pull tab on the zipper are presented in broken lines and is/are not claimed as a feature of the mark.

Trademark Application, p. 1, attached to the Barnett Decl. as Exhibit 1.[1] On March 15, 2013, the USPTO refused registration of the applied for mark on the ground that it is a non-distinctive product design. SUF 6.  In response, Arlington Specialties argued that the generic pouch shape was not a product design, but was instead, product packaging.  On October 11, 2013, the USPTO again refused registration, finding that the bag was (a) generic, (b) not product packaging, and (b) used in either identical or similar shapes in a wide variety of industries, stating "the applied-for three-dimensional product packaging mark is not inherently distinctive because it is comprised an inner soft pouch is merely a generic style of bag (often referred to as travel or Dopp kits/Bags), typically used to contain cosmetics and/or toiletry items."[2]  SUF 7.  In its refusal, the Examining

---

[1]  The Court should note that Arlington Specialties also seeks separate trademarks for the square plastic container for the bag and the Minimergency logo. Arlington Specialties does not contend that Urban Aid infringed on any of those pending applications.

[2]  "While courts are not bound by such determinations of the USPTO, they should show deference to the expertise of the examiners in assessing the functionality of claimed trade dress." *OgoSport LLC v. Maranda Enters. LLC*, 2012 U.S. Dist. LEXIS 27680 (E.D. Wis. Mar. 2, 2012) citing *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 395 (4th Cir. 2009).

Attorney identified numerous examples of the commonly used bag shape. *Id.* In addition to the examples cited by the Examining Attorney, including a virtually identical product distributed by Home Depot as the "MINI" kit, Urban Aid has compiled a non-exhaustive list of either identical or similar pouches used by many others. *Id.*

B.     The Alleged Infringement.

In late 2012, Urban Aid was contacted by DSW, a shoe distributor and an existing Urban Aid client, to create a custom pouch-type kit containing useful and generic items as a give-away promotion. DSW had a specific shape in mind, and Urban Aid simply went to its manufacturer in China, who sourced the product. SUF 14. The pouch was not labeled in any way. *Id.* A copy of the DSW promotional bag and the Arlington Specialties bag is attached to the Barnett Decl. as Exhibit 5. A review of Exhibit 5 shows that the two bags are not only different, but contain different items.

**ARGUMENT**

**I.**

**THE ELEMENTS OF THE TRADE DRESS CLAIM**

In order to prevail on a claim for trade dress infringement under the Lanham Act, a claimant must demonstrate that: (1) its trade dress is primarily non-functional; (2) its overall image has acquired distinctiveness through secondary meaning; and (3) the similarity of the non-claimant's trade dress causes a likelihood of confusion as to the source or affiliation of the product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 770, 120 L. Ed. 2d 615, 112 S. Ct. 2753 (1992). It is the ability of this overall appearance to identify the product as coming from a single source, rather than the appearance itself, that permits a trade dress to be protected under the Lanham Act. *See Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164, 131 L. Ed. 2d 248, 115 S. Ct. 1300 (1995). Arlington Specialties cannot demonstrate a material issue of fact on any of the elements.

-3-

## II.
## ARLINGTON'S "TRADE DRESS" IS PURELY GENERIC AND CAN *NEVER* BE PROTECTED

A.     The Standards for Generic Trade Dress.

Generic marks are never registrable as trademarks. *Two Pesos*, 505 U.S. at 768;

*Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997 (N.D. Ill. 2010) (same). "A product

design may be generic if it is the basic or a basic form of a type of product." *Big Island Candies,*

*Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1240 (D. Haw. 2003). A "generic" product design

may also be defined as one that "refer[s] to the genus of which the particular product is a species."

*Two Pesos*, 505 U.S. at 768. "'Generic product configurations,' or 'designs regarded by the public

as the basic form of a particular item,' should not be protectable even upon a showing of secondary

meaning." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638

(6th Cir. 2002); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2nd Cir. 2001); *Big Island*

*Candies*, 269 F. Supp. 2d at 1240 (same). Trade dress law thus does not protect a generalized type

of appearance. *Yurman*, 262 F.3d at 115-116. Trade dress law also does not protect "basic" design

features because of the concern that producers will be able to use trademark law to monopolize

products. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2nd Cir. 1997).

*See also Indonesian Imports, Inc. v. Smith*, 1999 U.S. Dist. LEXIS 4237, 1999 WL 183629 at 6

(N.D. Cal. Mar. 30, 1999) (refusing trade dress protection to a "basic crocheted handbag").

Finally, a product design may be "generic" because it is so common in the industry or in the

marketplace that it cannot be said to identify any particular source. *Mana Prods., Inc. v. Columbia*

*Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2nd Cir. 1995) (holding that a producer's makeup compacts'

"size and shape" are common characteristics of the entire genre of makeup compacts" and

consequently generic). "In the compact industry, nothing about a rectangular or square shape or

black color is "striking, unusual, or otherwise likely to differentiate the products of a particular producer . . . ." *Id.* at 170. "[B]asic product shapes are usually common in a given industry, and a court may deny protection to a product design based on both its commonness and its basicness.*"* *Id. See Indonesian Imports*, 1999 U.S. Dist. LEXIS 4237, 1999 WL 183629 at 7 ("Indonesian's claimed trade dress is "a composite of common and basic handbag features"). A court may also rely on the commonness of a product design to conclude that that design is "basic." Courts have recognized that there may be more than one applicable formulation of "genericness" in a product design case:

> In the context of product design, a "generic" design can be understood as a design dictated by the product itself, or a design that is one of a small number of available alternatives. Or it may mean that the design is so common or unoriginal that it is utterly lacking in distinctiveness. If the first manufacturer to make a desktop electronic calculator used a rectangular case, we do not think it could claim trade dress protection and forbid others to make rectangular calculators, or even rectangular calculators having specified proportions, even if other shapes would not be more expensive to make.

*Hanig & Co., Inc. v. Fisher & Co., Inc.*, 1994 U.S. Dist. LEXIS 20422, 1994 WL 97758 at *4 (N.D. Ill. Mar. 24, 1994).

B.     The Arlington Specialties Bag Fits Every Formulation Of "Genericness"

Arlington Specialties' claimed trade dress – the roughly cuboid shape – is the paradigm of a generic mark that no amount of secondary meaning can make "distinctive." *Indonesian Imports, Inc. v. Smith*, 1999 U.S. Dist. LEXIS 4237 (N.D. Cal. Mar. 30, 1999)(woven handbag shape generic). In *Indonesian Imports*, the company claimed that a crocheted handbag was its trade dress. However, "a simple, generic design based on common handbag features may be the style of 'The Sak,' indeed a style that has apparently been quite successful for Indonesian, it is incapable of denoting the source of the product to a consumer." *Id.* "Because its claimed 'The Sak Trade Dress'

is widely used in the industry, it is generic and unprotectable. Indonesian's evidence of secondary meaning is therefore irrelevant." *Id.*

Similarly, in *Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1247-1248 (D. Haw. 2003), the plaintiff, a manufacturer of cookies, claimed that its cookie design was trade dress, namely the rectangular shape, half-dipped in chocolate at various angles. As that Court held in granting summary judgment, "The BIC Cookie design is nothing more than a nondistinctive combination of a few basic, common design elements. Cookies are commonly rectangular and often have bull-nose corners, which naturally result from a basic and common method of making cookies. . . . Dipping cookies halfway in chocolate at various angles, including diagonally, is also common." *Id.* at 1247.

The Arlington Specialties bag is commonly used in the cosmetics industry, in the travel kit industry, and even in the exact market for the Arlington Specialties product. *See e.g.*, the Home Depot "MINI" kit, Exhibit 4, at Bates No. 152. "A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected." *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993,1000 (2nd Cir. 1997). The alleged trade dress at issue here has no distinguishing features, no special colors, material or markings. It does not even have an unusual shape or size, even though neither shape nor size can be protected trade dress. In the case of product design,

> we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs – such as a cocktail shaker shaped like a penguin – is intended not to identify the source, but to render the product itself more useful or more appealing.

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). Since no showing of secondary meaning or likelihood of success can protect a generic shape, this Court's analysis can

-6-

end here and summary judgment should be granted.

### III.
### THE ARLINGTON SPECIALTIES BAG IS PURELY FUNCTIONAL

A.    Standards For Determining Functionality.

A product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, *TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 32, 149 L. Ed. 2d 164, 121 S. Ct. 1255 (2001), and if it is costly to design around or do without. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989). Functionality is determined by a feature's usefulness. *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d at 858. Thus, a design that enables a product to operate is functional and it may not be trademarked. *Id.* at 857. "Expanding upon the meaning of this phrase, [the Supreme Court has] observed that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165). "Thus, as it relates to both utilitarian and aesthetic aspects of a product, the functionality doctrine forbids granting Lanham Act protection to 'non-reputation-related product features' where doing so will inhibit competition." *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 366 (S.D.N.Y. 2003)(fish-shaped gummy candy shape was aesthetic and therefore functional).

The person asserting trade dress protection has the burden of proving that the matter sought to be protected is not functional.  *TrafFix Devices,* 532 U.S. at 29.  *See also*, *Wal-Mart Stores*, 529 U.S. at 210.  "[W]here the design is functional . . . there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices*, 532 U.S. at 33. "Once a product feature is found functional based on other considerations, there is no need to consider the availability of alternative designs because the feature cannot be given trade dress protection merely

because there are alternative designs available." *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002). Moreover, where functionality is established, "whether [a] . . . design has acquired secondary meaning need not be considered." *TrafFix Devices*, 532 U.S. at 33. Thus, nonfunctionality – on which Arlington Specialties bears the burden of proof – is dispositive of all its trade dress claims.

B.    The "Bag" Is Purely Functional and Therefore Not Entitled To Trade Dress Protection.

The seminal case on "functionality" in trade dress claims in the Seventh Circuit, *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855 (7th Cir. 2010), is factually similar to this case and requires summary judgment. In *Jay Franco*, Franek obtained a trademark on a circle-shaped beach towel, with no specified color, logo, material or specific size – just the shape. After Jay Franco began selling a circle-shaped beach towel in Walmart and Target, Franek sued for trade dress infringement. The District Court granted Franco's motion for summary judgment, holding that a circular towel was functional, and invalidated Franek's trademark, which was affirmed by the Seventh Circuit.

"Franek wants a trademark on the circle. Granting a producer the exclusive use of a basic element of design (shape, material, color, and so forth) impoverishes other designers' palettes." *Id.* at 860. "But the more rudimentary and general the element--all six-sided shapes rather than an irregular, perforated hexagon; all labels made from tin rather than a specific tin label; all shades of the color purple rather than a single shade--the more likely it is that restricting its use will significantly impair competition." *Id.*

As in *Jay Franco*, Arlington Specialties is claiming a trademark on the most rudimentary and general shape – a roughly cuboid or rectangular pouch that opens with a zipper. "[T]he

function of the functionality doctrine is to prevent firms from appropriating basic forms (such as the circle) that go into many designs." *Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 616 F.3d 722, 727 (7th Cir. 2010). "Franek's towel is of this ilk. He has trademarked the 'configuration of a round beach towel.' Every other beach towel manufacturer is barred from using the entire shape as well as any other design similar enough that consumers are likely to confuse it with Franek's circle (most regular polygons, for example)." *Jay Franco*, 615 F.3d at 860-61.

Although *Jay Franco*'s holding that a common shape is quintessentially functional should be dispositive here, even under the standard formulation of "functionality," Arlington Specialties' claims fail. First, numerous cosmetic bags designed to fit into a woman's handbag use the exact same bag shape as Arlington Specialties'. Thus, the shape of the bag is essential to its use or purpose. *See also,* Complaint, ¶ 11 ("The kit . . . is small enough to easily fit in the palm of the hand, a purse or a desk drawer"). Both the purpose and the use of the bag is to contain useful items for a consumer that is both convenient to open and fits easily into a handbag or luggage. Thus, the bag must have a convenient shape and size to hold the utility items, which requires a rectangular or square shape of sufficient width and depth to both hold the various items, but still small enough to fit in a handbag. A top-opening zipper allows the consumer to easily access the contents of the bag while leaving it in a handbag, if necessary. The alleged "tucked and folded corners" are merely structural elements that are not only commonly used in the manufacture of numerous bags, but are one of only a few options available to keep the bag from collapsing. SUF 12. The "tucked and folded corners" are routinely used throughout the industry. SUF 13.

Significantly more unique shapes than Arlington Specialties' generic bag shape have been found to be functional. In *Malaco Leaf*, for example, the plaintiff distributed fish-shaped gummy

candies.  The Court held that extending Lanham Act protection to a common fish shaped gummy

candy would prevent any other manufacturer from marketing fish-shaped gummy bears. *Malaco*

*Leaf,* 287 F. Supp. 2d at 366.

Arlington Specialties is not without a remedy.  As the Seventh Circuit's closing sentence in

*Jay Franco* stated:

> If Franek is worried that consumers will confuse Jay Franco's round beach towels
> with his, he can imprint a distinctive verbal or pictorial mark on his towels.
> [citations omitted] That will enable him to reap the benefits of his brand while still
> permitting healthy competition in the beach towel market.

Similarly, Arlington Specialties is free to put a logo or other mark on its bags in order to reap the

benefits, if any, of the Minimergency brand.

**IV.**
**EVEN IF NOT FUNCTIONAL, ARLINGTON SPECIALTIES CANNOT SHOW EITHER**
**SECONDARY MEANING OR LIKELIHOOD OF CONFUSION**

A.      There Is No Possibility of Showing Secondary Meaning.

Even assuming that the generic bag shape is not generic or functional – which it is both –

Urban Aid is still entitled to summary judgment.  Without a showing of "inherent distinctiveness,"

Arlington Specialties must establish "secondary meaning."  To establish secondary meaning, a

plaintiff "must show that, in the minds of the public, the primary significance of its . . . trade dress

is that it identifies its source rather than the product itself." *Trendmasters, Inc. v. Walgreen Co.*,

1997 U.S. Dist. LEXIS 5601 (N.D. Ill. Apr. 18, 1997); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456

U.S. 844, 851 at n.11, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982).  Such a showing is impossible

here.

Arlington Specialties' kits were first marketed under the "Ms. & Mrs." brand. Then they

were marketed under the Pinch Provisions name only beginning *in 2012* – less than one year prior

to the filing of this Complaint. Complaint, ¶ 8. As alleged in the Complaint, ¶ 12, "Plaintiff has changed its logos and trade name over the years . . ." To claim that a generic bag shape with no other distinctive markings or features is somehow immediately associated with "Pinch Provisions" – a name used for less than a year – is therefore frivolous. As Judge Zagel aptly summarized in granting summary judgment after reviewing evidence that there were several "jack-o-lanterns" on the market,

> I cannot believe upon the record before me that an ordinary consumer would see the HallowScream and think of Trendmasters. The failure to establish this prong is fatal to plaintiff's claim of trade dress infringement.

*Trendmasters*, 1997 U.S. Dist. LEXIS 5601 (N.D. Ill. Apr. 18, 1997).

Similarly, as the USPTO stated in rejecting Arlington Specialties' "product packaging" argument,

> the Applicant's mark is not inherently distinctive, because it is a commonly used shape and design available from many sources. (see attached pages 32-85) No distinct commercial impression is created by these goods/portions of Applicant's mark.

October 11, 2013 USPTO Refusal, Exhibit 3. *See also*, Exhibit 4 (attaching numerous examples of common use). Because there are numerous identical bags used in the same market, no reasonable consumer could look at a generic cosmetic bag devoid of markings, logo, color or distinctive material and think of "Pinch Provisions." As a matter of law, it is therefore impossible to establish "secondary meaning."

B.      There Is No Likelihood Of Confusion.

If the design is generic, functional or lacks secondary meaning, likelihood of confusion is irrelevant. However, even if the Court reaches this element, there is also no likelihood of confusion. "A side-by-side comparison shows that the two designs, taken as a whole, create

overall visual impressions that would appear plainly dissimilar to the ordinary observer." *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (granting summary judgment of non-infringement on patent design claim); *Landscape Forms*, 113 F.3d at 378, n.3 ("objective consideration of the product and its similarity to others on the market will always be relevant and often decisive").

As shown in Exhibit 5, the Urban Aid and Arlington Specialties kits look different, contain different items, the Minimergency kit is packaged in a clear plastic box with the Pinch Provisions logo, and the contents are private-labeled with the Pinch Provisions brand. Urban Aid's pouch is generic and contains different, commercially available items packaged together in a convenient kit. Thus, looking at the two products side by side, no reasonable observer could believe that there is a likelihood of confusion.

## V.
## THE STATE LAW CLAIMS MUST ALSO BE DISMISSED

A.   The Unfair Competition Claims Based On The Alleged "Trade Dress" Infringement Fail.

Arlington Specialties' claims under both the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.* (Count III) and Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* (Count IV) rise or fall on whether Urban Aid infringed on Arlington Specialties' trade dress. Absent a protectible claim under the Lanham Act, there is no violation of unfair competition. *Thomas & Betts Corp. v. Panduit Corp.*, 935 F. Supp. 1399, 1419 (N.D. Ill. 1996) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). Accordingly, the Illinois Consumer Fraud and Deceptive Trade Practices Act and Uniform Deceptive Trade Practices Act claims must also fail. *Id.*

B.   The Interference With Prospective Business Advantage Fails To State A Claim.

-12-

1.      **The Complaint Fails To State A Claim.**

Under Illinois law, the elements of a claim for tortious interference with prospective economic advantage are: (i) plaintiff's reasonable expectation of entering a valid business relationship with a third party; (ii) the defendant's knowledge of the plaintiff's expectancy; (iii) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (iv) damages to the plaintiff resulting from such interference. *Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 6066, 20-22 (N.D. Ill. Mar. 25, 1997) (collecting Illinois numerous cases). Illinois law requires that the defendant's interference must be directed toward a specific third party. *Id.*

Arlington Specialties' Complaint does not identify a single "third party," nor does the Complaint allege any purposeful interference other than the marketing of a generic bag, *i.e.*, the Lanham Act claim recast. Thus, Urban Aid is entitled to judgment under both Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 56.

2.      **Competition Is A Complete Defense.**

A defendant is entitled to the protection of the "privilege" of the competition found in the Restatement (Second) of Torts, § 768, provided that the defendant has not employed a wrongful means and is not motivated solely by malice, *i.e.*, so long as the defendant has not acted in bad faith. *Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 6066, 20-22 (N.D. Ill. Mar. 25, 1997). Section 768 of the Restatement provides:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; and (b) the actor does not employ wrongful means; and (c) his action does not create or continue in an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other.

-13-

*Id.* Stated another way, "When a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the rights of others. They therefore have no cause of action against a bona fide competitor unless the circumstances indicate unfair competition, that is, an unprivileged interference with prospective advantage." *Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 469 (2006) citing *Belden Corp. v. Internorth. Inc.*, 90 Ill. App. 3d 547, 552, 413 N.E.2d 98 (1980). Accordingly, "interference with a business expectancy in the absence of a binding contract may be privileged where it subserves business competition." *Id.*

There is no question that the alleged conduct by Urban Aid satisfies the first and fourth elements, *i.e.*, whether the lost business opportunities concern a matter over which Urban Aid and Arlington Specialties are competitors and whether Urban Aid's conduct was motivated, in part, by its interest in competing with Arlington Specialties. The first element is satisfied because the Complaint avers that Urban Aid's product was potentially in direct competition with Arlington Specialties' product. Complaint, ¶ 26-27. The fourth element is satisfied because the Complaint alleges that Urban Aid's motivation for its strategy was its desire to secure its position in the market by offsetting competition from Arlington Specialties. *See* Complaint, ¶ 39.

Regarding the second element, comment e to the subdivision of § 768 relating to this element provides that "physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this section." *Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 6066, 20-22 (N.D. Ill. Mar. 25, 1997), quoting the Restatement (Second) of Torts § 768, at 39 (1979) (comment on clause (b)). "Comment e also provides that the actor may use persuasion, limited economic pressure, and may refuse other business transactions with third persons relating to that business." *Id.* There are no allegations in the Complaint that Urban Aid

-14-

employed any of the aforementioned wrongful means with respect to Arlington Specialties. As a result, the Complaint does not contain allegations reflecting that Urban Aid's conduct rose to a level similar to that described in comment e.

As for the third element, the Complaint does not contain allegations that Urban Aid created or continued an unlawful restraint of trade. Comment f to the subdivision of § 768 provides that alleged wrongdoer's conduct is improper if his or her conduct "is intended illegally to restrain competition" and that "one who refuses to deal with another in order to establish or maintain an illegal monopoly is subject to liability to the other." *Zenith Elecs. Corp.*, 1997 U.S. Dist. LEXIS 6066, 20-22. In addition, this comment provides that one "is subject to liability if for the same purpose he intentionally causes third persons not to deal with the other." *Id.* Urban Aid's alleged actions do not fall within any of these scenarios. Therefore, Urban Aid's alleged conduct was legitimate competition and is fully privileged. *Id.* (granting motion to dismiss claim).

## CONCLUSION

For the foregoing reasons, defendant Urban Aid respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in favor of Defendant Urban Aid.

Respectfully Submitted,

Dated: January 6, 2014

By:_____
Philip H. Stillman, Esq. (BBO# 555555) *pro hac vice*
Pstillman@stillmanassociates.com
STILLMAN & ASSOCIATES
300 South Pointe Drive, Suite 4206
Miami Beach, Florida 33139
(888) 235-4279

*Attorneys for Urban Aid, Inc.*
**CERTIFICATE OF SERVICE**

-15-

I, Philip H. Stillman, Esq., do hereby certify that I have served a copy of the foregoing document on counsel and interested parties by electronic notifications via CM/ECF electronic court notices.

Dated: January 6, 2014

By:_____

Philip H. Stillman, Esq. (BBO# 555555)
Pstillman@stillmanassociates.com
STILLMAN & ASSOCIATES
300 South Pointe Drive, Suite 4206
Miami Beach, Florida 33139
(888) 235-4279

-16-