## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ARLINGTON SPECIALTIES, INC., | ) | Civil Action No:  13-cv-04180 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URBAN AID, INC., | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

### URBAN AID, INC.'S LOCAL RULE 56.l(a)(3) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant Urban Aid, Inc. ("Urban Aid") respectfully submits pursuant to Rule 56.1( a)(3) of the Rules of the United States District Court for the Northern District of Illinois the following Statement of Material Facts as to Which There is No Genuine Issue. In support thereof, Urban Aid states as follows:

### THERE IS NO GENUINE ISSUE OF FACT REMAINING FOR TRIAL ON PLAINTIFF'S LANHAM ACT CLAIMS (COUNTS I AND II)

A.     The Alleged Trade Dress is Both Generic And Functional.

1.     Urban Aid has been in business for over 8 years, generally selling various types of commercially available emergency supplies packaged in a convenient packaging with somewhat humorous names, such as a "naughty nite" type kit, containing a condom, pair of panties, etc., to other types of kits containing useful products.  Barnett Declaration, ¶ 2.

2.     Plaintiff Arlington Specialties is also in the same broad industry, and sells it's own packaged kits under the name "Minimergency," and contains private-labeled products with the

"Pinch Provisions" logo. Barnett Decl., ¶ 3.

3.     Urban Aid and Arlington Specialties are not direct competitors, although both are in the same general market.  Although both companies sell types of "kits," even the DSW kit at issue in the Complaint contains different products than the Minimergency kit and does not compete with the Minimergency kit.  Barnett Decl., ¶¶ 4-5.

4.     In other words, a consumer might very well purchase kits from both companies since they fill different needs.  Thus, although the two companies are in the same broadly general market, a sale of an Urban Aid kit does not cost Arlington Specialties a sale. Barnett Decl., ¶¶ 5-6.

5.     Arlington Specialties filed a federal trademark application Serial No. 85851833 on February 15, 2013, claiming a trade mark in

> a three-dimensional configuration for packaging featuring a soft, structured pouch having a rounded cuboid shape with distinctive folded and tucked corners, a zipper running from the midpoint of one side of the pouch horizontally along the length of the top of the pouch to the midpoint of the second side of the pouch, and a pull tab on the zipper are presented in broken lines and is/are not claimed as a feature of the mark.

Trademark Application, p. 1, attached to the Barnett Decl. as Exhibit 1.

6.     On March 15, 2013, the USPTO refused registration of the applied for mark on the ground that it is a non-distinctive product design.  A copy of the March 15, 2013 refusal is attached to the Barnett Decl. as Exhibit 2.

7.     In response to Arlington Specialties' argument that the generic pouch shape was not a product design, but was instead, product packaging, on October 11, 2013, the USPTO again refused registration on the ground that the generic bag was not product packaging, and was used

-2-

in either identical or similar shapes in a wide variety of industries, stating "the applied-for three-dimensional product packaging mark is not inherently distinctive because it is comprised an inner soft pouch is merely a generic style of bag (often referred to as travel or Dopp kits/Bags), typically used to contain cosmetics and/or toiletry items." A copy of the USPTO's October 11, 2013 refusal is attached to the Barnett Decl. as Exhibit 3.

8. In its refusal, the Examining Attorney identified numerous examples of the commonly used bag shape. *Id.* In addition to the examples cited by the Examining Attorney, including a virtually identical product distributed by Home Depot as the "MINI" kit, Urban Aid has compiled a non-exhaustive list of either identical or similar pouches used by many others. Barnett Decl., ¶ 12; A copy of these examples is attached to the Barnett Decl. as Exhibit 4.

9. Numerous cosmetic bags designed to fit into a woman's handbag use the exact same bag shape as Arlington Specialties'. Thus, the shape of the bag is essential to its use or purpose. Barnett Decl., ¶ 13; Barnett Decl., Exh. 4..

10. Both the purpose and the use of the bag is to contain useful items for a consumer that is both convenient to open and fits easily into a handbag or luggage. Thus, the bag must have a convenient shape and size to hold the utility items, which requires a rectangular or square shape of sufficient width and depth to both hold the various items, but still small enough to fit in a handbag. Barnett Decl., ¶ 14.

11. A top-opening zipper allows the consumer to easily access the contents of the bag while leaving it in a handbag, if necessary. Barnett Decl., ¶ 15.

12. The alleged "tucked and folded corners" are merely structural elements that are not only commonly used in the manufacture of numerous bags, but are one of only a few options

available to keep the bag from collapsing.  Barnett Decl., ¶ 16.

13.     In addition, the "tucked and folded corners" are routinely used throughout the industry.  Barnett Decl., ¶ 16.

B.     The Alleged Infringement.

14.     In late 2012, Urban Aid was contacted by DSW, an existing client of Urban Aid's, to create a custom pouch-type kit containing useful and generic items as a give-away promotion. Barnett Decl., ¶ 17.

15.     DSW had a specific shape in mind, and Urban Aid simply went to its manufacturer in China, who sourced the bag used.  Barnett Decl., ¶ 17.

16.     The pouch was not labeled in any way. A copy of the DSW promotional bag and the Arlington Specialties bag is attached to the Barnett Decl. as Exhibit 5.

C.     No Likelihood Of Confusion.

17.     The two bags are not only different, but contain different items. Barnett Decl., ¶ 20; Barnett Decl., Exhibit 5.

18.     Urban Aid and Arlington Specialties kits look different, contain different items, the Minimergency kit is packaged in a clear plastic box with the Pinch Provisions logo, and the contents are private-labeled with the Pinch Provisions brand.  Barnett Decl., ¶20; Barnett Decl., Exhibit 5.

19.     Urban Aid's pouch is generic and contains different, commercially available items packaged together in a convenient kit.  Barnett Decl., ¶ 20; Barnett Decl.,  Exhibit 5.

20.     Looking at the two products side by side, no reasonable observer could believe that there is a likelihood of confusion. Barnett Decl., ¶ 21.

-4-

21.     The Arlington Specialties these kits were first marketed under the "Ms. & Mrs." brand. Then they were marketed under the Pinch Provisions name only beginning in 2012 – less than one year prior to the filing of this Complaint. Complaint, ¶ 8.

22.      "Plaintiff has changed its logos and trade name over the years . . ."  Complaint, ¶ 12.

23.     Similarly, as the USPTO stated in rejecting Arlington Specialties' "product packaging" argument,

> the Applicant's mark is not inherently distinctive, because it is a commonly used shape and design available from many sources. (see attached pages 32-85) No distinct commercial impression is created by these goods/portions of Applicant's mark. Additionally, the attached evidence shows the use of bags or boxes generally in the marketplace to contain "kits" similar to those offered by the Applicant, and/or cosmetics and/or toiletry items.

October 11, 2013 USPTO Refusal, Barnett Decl., Exhibit 3.  See also, Barnett Decl., Exhibit 4 (showing numerous identical bags commonly used in the same market).

24.     Because there are numerous identical bags used in the same market, no reasonable consumer could look at a generic cosmetic bag devoid of markings, logo, color or distinctive material and think of "Pinch Provisions."  Barnett Decl., ¶ 23.

## NO GENUINE ISSUE OF FACT EXISTS ON PLAINTIFF'S CLAIMS UNDER BOTH THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1 ET. SEQ. (COUNT III) AND ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ. (COUNT IV)

25.     In Count III of the Complaint, Arlington Specialties claims that Urban Aid violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.* by

distributing the DSW bag, what Arlington Specialties refers to as the "Infringing Dress." Complaint, ¶¶ 54-55.

26.     In Count IV, Arlington Specialties alleges that Urban Aid violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.*  Complaint, ¶¶ 60-62.

27.     As shown in Fact Nos. 1-24, because Arlington Specialties has no protectible federal trade dress alleged in the Complaint, there are no material issues of fact on Arlington Specialties' state law claims set forth in Counts III and IV.  Fact Nos. 1-24, *supra*.

## THERE ARE NO MATERIAL ISSUES OF FACT ON COUNT V OF THE COMPLAINT FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

28.     Arlington Specialties has not identified a single third party with whom it had a reasonable expectation of entering a valid business relationship. Complaint, ¶ 66-68.

29.     At no time has Urban Aid been aware of any of Arlington Specialties' specific potential clients or Arlington Specialties' reasonable expectations of entering into a business relationship with any specific third party.  Barnett Decl, ¶ 25.

30.     At no time did Urban Aid take any intentional or purposeful acts to prevent any reasonable expectancy from ripening into a valid business relationship between Arlington Specialties and any third party. Barnett Decl., ¶ 26.

31.     The Complaint fails to allege any purposeful interference other than the marketing of a generic bag.  Complaint, ¶ 66-68.

## COMPETITION IS A COMPLETE DEFENSE

32.     The Complaint avers that Urban Aid's product was potentially in direct

competition with Arlington Specialties' product. Complaint, ¶ 26-27; Barnett Decl., ¶ 26.

33.     At no time has Urban Aid been aware of any of Arlington Specialties' specific

potential clients or Arlington Specialties' reasonable expectations of entering into a business

relationship with any specific third party. Barnett Decl. ¶ 24.

34.     At no time did Urban Aid take any intentional or purposeful acts to prevent any

reasonable expectancy from ripening into a valid business relationship. Barnett Decl., ¶ 25.

35.     Arlington Specialties alleges that Urban Aid's motivation for its strategy was its

desire to secure its position in the market by offsetting competition from Arlington Specialties.

*See* Complaint, ¶ 39.

36.     Urban Aid's packaging for DSW was at DSW's request, and was selected only in

order to secure Urban Aid's position in the market and service its clients as a competitor. Barnett

Decl., ¶ 27.

37.     Urban Aid at all times acted in good faith and with no intent to harm Arlington

Specialties or interfere with Arlington Specialties' ability to market its product. Barnett Decl., ¶

28.

38.     Urban Aid never used "physical violence, fraud, civil suits and criminal

prosecutions" against Arlington Specialties or any alleged prospective business advantage with

any third party. Barnett Decl., ¶ 29.

39.     Urban Aid never used persuasion, limited economic pressure, or refused other

business transactions with third persons relating to Arlington Specialties' business. Barnett Decl.,

¶ 30.

40.     Although the Complaint does not contain allegations that Urban Aid created or

continued an unlawful restraint of trade, Urban Aid never "intended illegally to restrain

competition" or "refused to deal with another in order to establish or maintain an illegal

monopoly." Barnett Decl., ¶ 31.

41.    Urban Aid never intentionally caused any third person not to deal with Arlington

Specialties. Barnett Decl., ¶ 32.

Respectfully Submitted,

Dated: January 6, 2014                    By:_____
                                          Philip H. Stillman, Esq. (BBO# 555555)
                                          Pstillman@stillmanassociates.com
                                          STILLMAN & ASSOCIATES
                                          300 South Pointe Drive, Suite 4206
                                          Miami Beach, Florida 33139
                                          (888) 235-4279

                                          Christopher Niro
                                          cniro@nshn.com
                                          NIRO, HALLER & NIRO
                                          181 W. Madison St. Ste. 4600
                                          Chicago, IL 60602
                                          (312) 236-0733

                                          *Attorneys for Urban Aid, Inc.*

**CERTIFICATE OF SERVICE**

I, Philip H. Stillman, Esq., do hereby certify that I have served a copy of the foregoing document on counsel and interested parties by electronic notifications via CM/ECF electronic court notices.

Dated: November 8, 2013

By:_____
Philip H. Stillman, Esq. (BBO# 555555)
Pstillman@stillmanassociates.com
STILLMAN & ASSOCIATES
300 South Pointe Drive, Suite 4206
Miami Beach, Florida 33139
(888) 235-4279