# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, ) ) ) | Case No. 13 CV 4180 |
| Plaintiff, ) ) | Judge Sharon Johnson Coleman |
| v. ) ) | |
| URBAN AID, INC., ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arlington Specialties, Inc. d/b/a Pinch Provisions ("Pinch Provisions"), filed suit against Defendant Urban Aid, Inc. ("Urban Aid") alleging trade dress infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) and (c) *et seq.*, and various state statutes. The suit alleges that Urban Aid introduced emergency supply kits packaged in small pouches, the shape of the pouch being at issue as allegedly protected by the Lanham Act. Urban Aid moves for summary judgment on the grounds that the bag's shape is functional and therefore cannot be protected as trade dress. For the reasons stated herein, Urban Aid's motion for summary judgment is granted.

### Background

The following facts are undisputed. Pinch Provisions, an Illinois corporation, specializes in beauty fashion, first-aid, and personal care products, namely, portable "survival kits." Pinch Provisions distributes its products to specialty and high-end retailers, and also sells online. Urban Aid, a California corporation, is in the business of selling various types of commercially

available gift, novelty, and emergency supplies in convenient packaging. (Pl. 56.1 Resp. ¶1.) Both parties are in the same market selling various kinds of specialty "kits." (*Id*. at ¶2.)

In 2008, Pinch Provisions, then doing business under the name "Ms. & Mrs.," introduced a line of kits that was a miniature version of its "Shemergency" kit called the "Minimergency Survival Kit." (Def. 56.1 Resp. ¶1.) On February 13, 2013, Pinch Provisions filed a federal trade dress application, Serial No. 85851833, claiming a trade mark in "a three-dimensional configuration for packaging featuring a soft, structured pouch having a rounded cuboid shape with distinctive folded and tucked corners…" (Pl. 56.1 Resp. ¶5.) On March 15, 2013, the United States Patent and Trademark Office ("USPTO") issued an initial, non-final office action refusing registration of the applied-for mark on the ground that it is a non-distinctive product design, and requested evidence of a secondary meaning. (*Id*. at ¶6.) On October 11, 2013, the USPTO issued a second, non-final office action, again refusing registration and instead requesting that Pinch Provisions submit evidence in support of the distinctiveness of the product packaging. (*Id*. at ¶7.)

The alleged infringement occurred in late 2012, when Urban Aid was contacted by Designer Shoe Warehouse ("DSW"), a shoe distributor, to create a pouch-type kit containing useful items as a give-away promotion. (Pl. 56.1 Resp. ¶5.) DSW sent Urban Aid photographs of an actual Minimergency kit as what it had in mind, and Urban Aid went to its manufacturer in China, who sourced the bag used. (*Id*. at ¶¶14, 15.) The pouch was not labeled in any way. *Id*. at ¶16. A picture of the DSW promotional bag created by Urban Aid (right) and the Pinch Provisions' bag (left) is attached below:



Dkt. #30, Ex. 2.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder,* 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. The Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and

supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

## Discussion

In Counts I and II of the complaint, Pinch Provisions alleges federal trade dress infringement and unfair competition under 15 U.S.C. § 1125(a). Count III alleges unfair trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.* Count IV alleges consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* And Count V alleges tortious inference with prospective business advantage under Illinois State law. All counts of Pinch Provisions' complaint are based on the trade dress claimed by Pinch Provisions in its "Minimergency" line. (Compl. ¶ 12.)

Trade dress "refers to the total image of a product, including features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques." *Computer Care v. Serv. Sys. Enters., Inc.,* 982 F.2d 1063, 1067 (7th Cir. 1992) (internal quotation marks omitted). The Lanham Act protects trade dress, even if it is not registered, and authorizes civil actions against infringers provided the trade dress is not functional. *See* 15 U.S.C. § 1125(a)(3); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210 (2000).

Urban Aid moves for summary judgment on the basis that the pouch design at issue is both functional and generic, and, therefore, cannot be protected by trade dress. *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23 (2001); *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 297 (7th Cir.1998). In order to prevail on any of its claims, Pinch Provisions must first prove that the alleged trade dress is not functional. Plaintiff bears this threshold burden of proof. *See* 15 U.S.C. § 1125(a)(3) ("the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.") Pinch Provisions argues that,

at minimum, it has provided sufficient evidence of a factual dispute regarding the Minimergency dress being non-functional, and that the USPTO proceedings are ongoing and trade dress need not be registered to be enforceable.

For trade dress infringement to be enforceable under the Lanham Act, Pinch Provisions must demonstrate that: (i) its trade dress is primarily non-functional; (ii) its trade dress has acquired an overall image that is distinctive through secondary meaning; and (iii) the similarity of Urban Aid's trade dress causes a likelihood of confusion as to the source or affiliation of the products. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 770 (1992). Urban Aid argues that Pinch Provisions' claimed trade dress, the roughly cuboid shape bag that opens with a zipper, is purely functional, is generic to the point that its image carries no distinction through secondary meaning, and that the bag is so customarily used in the cosmetics, travel, and specialty kit industries, there is no likelihood of confusion. The Court agrees.

Functionality is determined by a feature's usefulness. *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 858 (7th Cir. 2010). Thus, a design that enables a product to operate is functional and it may not be trademarked. *Id.* at 857. "Expanding upon the meaning of this phrase, [the Supreme Court has] observed that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices*, 532 U.S. at 32 (quoting *Qualitex CO. v. Jacobsen Products Co., Inc.,* 514 U.S. 159, 165 (1995)).

Pinch Provisions is claiming trade dress in the most rudimentary, useful, and functional of objects: a roughly cuboid or rectangular miniature bag that opens with a zipper.[1] Under any standard reading of "functionality," Pinch Provisions' claims fail. First, numerous cosmetic bags

---

[1] The Complaint indicates that a transparent outer box further comprises Pinch Provisions' trade dress. (*See* Compl. ¶ 12). However, it appears Pinch Provisions abandons this element in its Memorandum in Opposition to Defendant's Motion for Summary Judgment. (Pl.'s Resp. 3.)

designed to fit into a handbag employ a similar bag shape as Pinch Provisions'. Therefore, the shape of the bag is essential to its use or purpose. *See also,* Compl., ¶ 11 ("The kit . . . is small enough to easily fit in the palm of the hand, a purse or a desk drawer"). Both the purpose and function of the bag is to contain useful items for a consumer that is both convenient to open and fits easily into a handbag or luggage. Thus, the bag must have a convenient shape and size to hold the utility items, yet still small enough to fit in a handbag. The alleged "tucked and folded corners" are routinely used throughout the industry and are structural elements that are not only commonly used in the manufacture of numerous bags, but are one of only a few options available to keep a bag from collapsing. (Def. 56.1 ¶12.)

Significantly, much more unique things than a generic, miniature pouch have been found to be functional. In *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355 (S.D.N.Y. 2003), for example, the plaintiff distributed fish-shaped gummy candies. The Court held that extending Lanham Act protection to a common fish-shaped gummy candy would prevent any other manufacturer from marketing fish-shaped gummy candies. *Id.* at 366. Pinch Provisions seeks to establish Lanham Act protection for a small bag used to contain specialty items that has no unusual shape or size, even though neither shape nor size can be protected trade dress. *Wal-Mart Stores, Inc.,* 529 U.S. at 212. The alleged trade dress at issue has no distinguishing features, no special colors, ornamentation, material or markings. And generic marks are never registerable trademarks. *Two Pesos*, 505 U.S. at 768. A product design may be "generic" because it is so common in the industry or in the marketplace that it cannot be said to identify any particular source. *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2nd Cir. 1995) (holding that a producer's makeup compacts' "size and shape" are common characteristics of the entire genre of makeup compacts" and consequently generic). "In the

compact industry, nothing about a rectangular or square shape or black color is "striking, unusual, or otherwise likely to differentiate the products of a particular producer . . . ." *Id.* at 1070. Likewise, extending Lanham Act protection to a generic pouch would prevent any other manufacturer from using similar pouches and would allow Pinch Provisions to use trademark law to monopolize its industry.

Pinch Provisions argues, without the support of case law, that because no evidence of any utility patent covers or describes the Minimergency bag, the Court should weigh that in favor of a finding of non-functionality. The Court finds this argument unpersuasive. Additionally, Pinch Provisions' citation to *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir. 1992) undercuts its own case, as *Abbot Labs* held that trade dress is functional only if competitors must have it "in order to be able to compete effectively in the market." Following Pinch Provisions' suggested case law, the Court is led to finding the alleged trade dress functional, as Pinch Provisions' competitors must be allowed to make use of a similar miniature pouch in order to effectively compete in the mini survival kit market. If the pouch was protected, competitors would need to spend money to avoid similar packaging.

Essentially, to allow Pinch Provisions to trademark a "roughly cuboid" pouch would condone precisely what the Supreme Court prohibits, as it would put competitors at a significant non-reputation-related disadvantage by prohibiting the sales of any roughly square pouches that are otherwise devoid of logo, material or markings. *Jay Franco*, 615 F.3d at 857. "[W]here the design is functional . . . there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices*, 532 U.S. at 33. "Once a product feature is found functional based on other considerations, there is no need to consider the availability of alternative designs because the feature cannot be given trade dress protection merely because

there are alternative designs available." *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002). Moreover, where functionality is established, "whether [a] . . . design has acquired secondary meaning need not be considered." *TrafFix Devices*, 532 U.S. at 33. Accordingly, the Court declines to continue its analysis, as the Court finds the pouch design at issue to be functional.

Pinch Provisions, however, is not without a remedy. As the Seventh Circuit explained in *Jay Franco*, "[plaintiff] can imprint a distinctive verbal or pictorial mark…that will enable him to reap the benefits of his brand while still permitting healthy competition." *Id*. at 861. Similarly, Pinch Provisions is free to put a logo or other mark on its bags in order to obviate any confusion of the Minimergency brand. However, because non-functionality, on which Pinch Provisions bears the burden of proof, is dispositive of all its trade dress claims, and the Court finds that Pinch Provisions failed to provide any evidence that a genuine issue of material fact exists regarding the alleged trade dress being functional, Counts I and II of the complaint fail. Pinch Provisions' claims under both the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.* (Count III) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* (Count IV) rise or fall on whether Urban Aid infringed on Pinch Provisions' alleged trade dress, as they are based on the same allegations as those brought under the Lanham Act. Absent a protectable claim under the Lanham Act, there is no violation of either statute. Count V alleges tortious interference with prospective business advantage, but without a protectable trade dress there is no wrongful conduct. Pinch Provisions' state law claims necessarily rely on having a protectable trade dress. Because the Court finds that Pinch Provisions has failed to meet its burden of proving non-functionality and that no genuine issue of material fact exists, Urban Aid is entitled to judgment as a matter of law.

**Conclusion**

For the reasons stated herein, the undisputed facts demonstrate that no genuine issue of material fact exists and Urban Aid is entitled to judgment as a matter of law. This Court grants the motion for summary judgment [27], and the case is dismissed with prejudice.

IT IS SO ORDERED.

Date: September 30, 2014         Entered: *[signature]*
SHARON JOHNSON COLEMAN
United States District Judge